**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PATRICK NOEL THAYER, | : | Case No. 1:25-cv-615 |
| | : | |
| Petitioner, | : | |
| | : | Judge Douglas R. Cole |
| vs. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| WARDEN, NORTH CENTRAL | : | |
| CORRECTIONAL INSTITUTION | : | |
| | : | |
| Respondent. | : | |

**REPORT AND RECOMMENDATIONS**

Patrick Noel Thayer, a state prisoner proceeding without counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  The matter is before the Undersigned to consider the Petition (ECF No. 1-1), the Return of Writ (ECF No. 18), the Traverse (ECF No. 24), and the state court record.  (ECF No. 17).  The Undersigned **RECOMMENDS** that the action be **DISMISSED**.

**I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On June 23, 2023, a Warren County, Ohio grand jury indicted Thayer on five counts: unlawful securities practices in violation of Ohio Rev. Code Ann. § 1707.44(G); unlawful securities practices in violation of Ohio Rev. Code Ann. § 1707.44(M)(1)(b); aggravated theft in violation of Ohio Rev. Code Ann. § 2913.02(A)(2) and (B)(2); telecommunications fraud in violation of Ohio Rev. Code Ann. § 2913.05(A)–(C); and identity fraud in violation of Ohio Rev. Code Ann. § 2913.49(8) and (1)(2).  (ECF No. 17 at PageID# 86–89).  On August 4, 2023, Thayer pled guilty to unlawful securities practices; aggravated theft; and identity theft, as the appellate court called it.  (*Id.* at PageID# 91–94).  At the plea hearing, the state described the state's case:

1

> Your Honor, if the state or if this case had proceeded to trial, the state would have proven beyond a reasonable doubt that between November 1, 2013, and August 3, 2022, the Defendant was licensed as a security salesperson and then later as an investment advisor. The victim was a client who had trusted her investments with the Defendant in his capacity as a security salesperson and an investment advisor.
>
> The Defendant opened a bank account in the victim's name without her knowledge or consent. He forged various documents to effectuate transfers of funds from unauthorized sales of the victim's investments to that bank account. And then in doing so stole $1,310,605.81 from the victim. He used those funds that were transferred to that bank account to pay for his own personal expenses. And all of this occurred in Warren County, Ohio, Your Honor.

(*Id.* at PageID# 151–152).  The trial court sentenced Thayer to five to seven and a half years for unlawful securities practices, five years for aggravated theft, and five years for identity theft.  (*Id.* at 95–98).  The trial court concluded that the sentences should be served consecutively:

> the offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct and/or the Defendant's history demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant.

(*Id.* at PageID# 96).  Added up, Thayer's consecutive sentences total 15–17.5 years of imprisonment.  (*Id.*).

### A. Direct Appeal

Thayer appealed.  (*Id.* at PageID# 99–103).  He raised two assignments of error before the Twelfth District Court of Appeals ("Court of Appeals"):

(1) The trial court committed plain error by failing to merge the counts for sentencing purposes.

(2) Trial counsel was ineffective by failing to object to the trial court's failure to merge the counts for sentencing purposes.

(*Id.* at PageID# 111–112).  The Court affirmed.  (*Id.* at 147–163).

After the Court of Appeals' decision, Thayer filed a Notice of Appeal with Supreme Court of Ohio and a memorandum in support of jurisdiction.  (*Id.* at PageID# 171–186).  He raised a single proposition of law:

> Multiple fraud and theft offenses related to a single scheme to steal from one victim are not dissimilar in import or significance, committed separately, or with separate animus or motivation and therefore, pursuant to Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution, and R.C. 2941.25, are allied offenses that must be merged for sentencing.

(*Id.* at PageID# 174).  On November 26, 2024, the Ohio Supreme Court declined jurisdiction.  (*Id.* at PageID# 204).

## B.      State Postconviction Proceedings

While his direct appeal was pending, Thayer filed a petition for postconviction relief with the Warren County Court of Common Pleas.  (*Id.* at PageID# 205–213).  He asserted five claims:

(1)      Trial counsel was ineffective by incorrectly advising petitioner as to the applicable law regarding the consequences of accepting a plea by misinforming the petitioner of the nature of the plea and by grossly understating the probable sentencing being faced, a violation of rights described under Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution.

(2)      Trial counsel was ineffective for making inappropriate and threatening comments to the Petitioner, a violation of rights described under Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution.

(3)      Trial counsel was ineffective for failing to object to prosecutorial misconduct, a violation of rights described under Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution.[1]

(4)      Trial counsel was ineffective for failing to object to prosecutorial misconduct, a violation of rights described under Sixth·Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution.[2]

(5)      Trial counsel was ineffective for failing to object to judicial misconduct, leading to a violation of rights described under Fifth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution, a violation of rights described under Sixth Amendment, U.S. Constitution; Section 10, Article I, Ohio Constitution.[3]

---

[1] Thayer described the prosecutorial misconduct as introducing "non-actionable" Securities and Exchange Commission ("SEC") complaints by former clients at his sentencing hearing.  (ECF No. 17 at PageID# 208–209).

[2] Thayer described the prosecutorial misconduct as mentioning at the sentencing hearing that he had been prosecuted in federal court for a misdemeanor and society needed to be protected from him.  (ECF No. 17 at PageID# 209).

[3] Thayer described the judicial misconduct as entering a ruling that his sentences should be served consecutively. (ECF No. 17 at PageID# 210–211).

(*Id.* at PageID# 206–210).  The Warren County Court of Common Pleas denied Thayer's petition, finding the claims were barred by res judicata and, alternatively, lacked merit.  (*Id.* at PageID# 249–256).  Thayer did not appeal the denial of this petition.

On January 17, 2025, Thayer filed another postconviction petition with the Warren County Court of Common Pleas.  (*Id.* at PageID# 257–259).  This time, he alleged that the trial court erred in finding that he was not eligible for community control due to likely recidivism.  (*Id.* at PageID# 257–259).  He argued that he surrendered his investment licenses to the SEC and agreed to a lifetime ban.  (*Id.*).  On June 9, the Warren County Court of Common Pleas dismissed Thayer's petition as untimely and successive.  (*Id.* at PageID# 299–304).  On June 25, Thayer wrote a letter to the Warren County Court of Common Pleas stating that he wanted to appeal.  (*Id.* at PageID# 305–306).  About three months later, the Court of Appeals issued a Show Cause Order because Thayer failed to file a timely brief.  (*Id.* at PageID# 313).  The Court of Appeals subsequently dismissed Thayer's appeal for failing to file a timely brief.  (*Id.* at PageID# 314).

## II.  FEDERAL HABEAS PROCEEDINGS

On August 22, 2025, Thayer filed the instant federal habeas petition.  He asserts three grounds for relief:

> **GROUND ONE**: State violated petitioner's Fifth Amendment Rights by sentencing petitioner to consecutive sentences for allied offenses, a violation of O.R.C. 294 l.25(A).
>
> **Supporting Facts:** The charges of Unlawful Securities Practices, Aggravated Theft, and Identity Fraud represent the actions and violations stemming from one scheme, one course of action, and with one victim from November, 2013 to August, 2022. When the petitioner will present evidence and case study showing that these are indeed allied offenses.
>
> **GROUND TWO:** The State violated petitioner's Fourteenth Amendment Due Process Rights by changing the facts of the case and by potentially prosecuting an offense beyond the statute of limitations according to O.R.C. Ann. 2901.13(A)(1)(a).

4

**Supporting Facts:**     The State has changed its statements and the facts of the case to meet its needs depending on which court was being addressed. The State has made statements that the petitioner's fraudulent behavior including opening a bank account and forging documents continued throughout the life of the scheme, roughly nine years (See Exhibit B - *State v. Thayer*, 23CR40675, State's Motion to Dismiss Petition, Memorandum (A) ¶ 1). In the State's opposition to the petitioner's appeal, the State changed its position and the facts of the case in order to meet the condition that the offense was completed at a separate time and thus not eligible for merger as set forth in R.C. 2941.25(B). "The identity theft offense was completed when Thayer opened the fraudulent bank account at Ally Bank in November of 2013." *State v. Thayer*, 2024-Ohio-3050, ¶ 42.

**GROUND THREE:**     The petitioner received ineffective assistance of counsel.

**Supporting Facts:**     At appeals, the petitioner's counsel did not object to the State's arguments in opposition even though they were outside of the law, statutes, and precedents. Counsel also failed to object when the State changed the timeline. With no objection, counsel then failed to point out that the State's prosecution of Identity Fraud was in violation of the statute of limitations and the aggravating factors contained in the statute.

(ECF No. 1-1 at PageID# 20–24 (as in original)).

On March 16, 2026, Respondent filed a Return of Writ. (ECF No. 18). Respondent contends that all three of Thayer's habeas claims are procedurally defaulted. (*Id.* at PageID# 333). Respondent argues that Ground One, alternatively, is non-cognizable and lacks merit. (*Id.* at PageID# 338–352). Thayer filed a Traverse. (ECF No. 24).

## III.     PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust

state remedies.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).  Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas."  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

The term "procedural default" describes a situation where a person convicted of a crime in a state court fails, for any reason, to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process.  This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court.  As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted."  It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner."  *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit use a four-part test.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also*

6

*McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default, and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. To establish cause, a petitioner must show that "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

Respondent argues that Ground One is procedurally defaulted because trial counsel failed to object to the imposition of consecutive sentences, and the Court of Appeals enforced Ohio's contemporaneous objection rule. (ECF No. 18 at PageID# 333–334). But the Court of Appeals' decision reveals that it did not enforce Ohio's contemporaneous objection rule against Thayer. (ECF No. 17 at PageID# 147–63). Instead, the Court of Appeals recognized that the standard of review would be "plain error" regardless of whether Thayer's counsel objected:

> {19} An appellate court typically reviews de novo the trial court's R.C. 2941.25 merger determination. *State v. Clowers*, 2019-Ohio-4629, ¶ 32 (12th Dist.). However, Thayer concedes that his trial counsel did not object to the court finding that the three counts were of dissimilar import and that he is limited to arguing plain error on appeal.

7

> {10} But the Ohio Supreme Court has held that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood,* 2010- Ohio-1, ¶31, citing *State v. Yarbrough*, 2004-Ohio-6087, ¶ 96–102. Accordingly, we conduct the merger analysis de novo.

(*Id.* at PageID# 149–150). The Court of Appeals did not invoke the contemporaneous objection rule, nor did it impose a penalty on Thayer for his counsel's failure to comply with it. There is no independent and adequate state ground on which the Court of Appeals' decision rests, and Ground One, therefore, is not procedurally defaulted.

Next, Respondent argues that Grounds Two and Three are procedurally defaulted because Thayer never raised the claims in state court. (ECF No. 18 at PageID# 334–336). The Court agrees. A petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). As noted above, Ground Two challenges the state's argument on direct appeal that the crime of identity theft was complete in 2013, and Ground Three challenges the fact that Thayer's appellate counsel failed to object to the state's argument that the crime of identity was complete in 2013 on statute of limitation grounds. (ECF No. 1-1 at PageID# 22–25).

The record reflects that Thayer did not include Ground Two in his petitions for postconviction relief. (ECF No. 17 at PageID# 205–213, 257–259). Even if Thayer had included Ground Two in either of his postconviction petitions, it would nonetheless be procedurally defaulted because Thayer failed to appeal the denial of those petitions.

To raise Ground Three's claim in state court, Ohio state law required Thayer to file an application to reopen the direct appeal under Ohio App. R. 26(B) as claims of ineffective assistance of appellate counsel are not cognizable in the normal course of postconviction proceedings. *Hoffner v. Bradshaw*, 622 F.3d 487, 504 (6th Cir. 2010). The record reflects that Thayer failed to file a motion to reopen his direct appeal to challenge his appellate counsel's performance.

8

Thayer's Traverse offers no arguments for "cause" and "prejudice" to excuse the procedural default of either Grounds Two or Three. Accordingly, the Court should dismiss Grounds Two and Three as procedurally defaulted. In any event, as discussed below, the Court should dismiss all three of Thayer's claims for lacking merit.

## IV. MERITS REVIEW

28 U.S.C. § 2254, as amended by AEDPA, provides federal courts with the statutory authority to issue habeas corpus relief for persons in state custody. The United States Supreme Court described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state–court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has interpreted § 2254(d)(1):

9

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Further, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). And "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Finally, the burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### C.  Merits of the Claim Properly Before the Court (Ground 1)

In Ground One, Thayer contends that his consecutive sentences violate Ohio Rev. Code Ann. § 2941.25(A) and the Double Jeopardy Clause of the Fifth Amendment. (ECF No. 1-1 at

PageID# 20).  Respondent argues that Ground One is non-cognizable in federal habeas review and, alternatively, lacks merit.  (ECF No. 18 at PageID# 338–352).

To the extent Thayer seeks federal habeas relief because his consecutive sentences violate Ohio law, he raises an issue that is not cognizable here.  *Driggins v. Lazaroff*, No. 1:14-CV-919, 2015 WL 6957219, at *31 (N.D. Ohio Oct. 27, 2015) ("To the extent Driggins complains his sentence was improper based on Ohio sentencing laws and the interpretation of those laws (such as consecutive sentences), such a claim is not cognizable on federal habeas review."); *Hoffman v. Tribley*, No. 13-10868, 2013 WL 1137353, at *2 (E.D. Mich. Mar. 19, 2013) (citing *Coleman v. Koloski*, 415 F.2d 745, 746 (6th Cir. 1969)) ("Regarding consecutive sentencing, the application of state sentencing laws governing consecutive sentencing does not present a federal constitutional question but merely an issue of state law which is not cognizable on habeas review."); *see also Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir. 1998) (holding that although the trial court may have violated a state criminal rule in changing the petitioner's sentence from concurrent to consecutive sentences in his absence, "this error does not . . . constitute a violation of procedural due process of law," but rather is an alleged violation of state law that "is not cognizable in a federal habeas corpus proceeding"); *Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

Beyond Ohio law, Thayer argues the Double Jeopardy Clause of the Fifth Amendment protects against, among other things, the imposition of multiple punishments for the same offense. *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013), *as amended on denial of reh'g* (Jan. 31, 2013); *see also Ohio v. Johnson*, 467 U.S. 493, 498 (1984).  The prohibition against multiple punishments protects against the imposition of sentences greater than the state legislature intended.  *Volpe*, 708

11

F.3d at 696; *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).  "The Double Jeopardy Clause is not violated if the state legislature intended to impose cumulative punishment when the same conduct violates two statutes."  *Gordon v. May*, No. 22-4003, 2023 WL 3719068, at *4 (6th Cir. Apr. 25, 2023) (citing *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014)).

When assessing the state legislature's intent, a federal court is bound by a state court's construction of that state's own statutes.  *White v. Howes*, 586 F.3d 1025, 1031 (6th Cir. 2009). Ohio courts apply the allied offense statute, Ohio Rev. Code Ann. § 2941.25, to determine whether the state legislature intended "cumulative punishments" for certain, multiple offenses.  *Volpe*, 708 F.3d at 697.  "An Ohio court of appeals decision of a double jeopardy claim which is limited to the application of Ohio Rev. Code § 2941.25 is entirely dispositive of the federal double jeopardy claim."  *Moten v. Cook*, No. 3:19-CV-267, 2019 WL 5588907, at *2 (S.D. Ohio Oct. 30, 2019), *report and recommendation adopted sub nom. Moten v. Warden, Se. Corr. Inst.*, No. 3:19-CV-267, 2019 WL 6212398 (S.D. Ohio Nov. 21, 2019).

The Twelfth District Court of Appeals applied Ohio Rev. Code Ann. § 2941.25 and rejected Thayer's allied offenses claim:

> {¶24} Both the Ohio Constitution and the United States Constitution "prohibit the government from subjecting a person to multiple punishments for the same offense" *State v. Herzner*, 2021-Ohio-4244, ¶10 (12th Dist.), citing *State v. Ruff*, 2015-Ohio-995, ¶ 10. The double jeopardy provision in Article I, Section 10 of the Ohio Constitution states, "No person shall be twice put in jeopardy for the same offense." The double jeopardy provision of the Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb. . . ." The federal double jeopardy clause applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). After citing both constitutional provisions, the Ohio Supreme Court in *Ruff* explained that "[t]he Double Jeopardy Clause protects against three abuses: (1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *Ruff* at ¶ 10, quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

{¶25} The state and federal constitutional protection against the third abuse-multiple punishments for the same criminal offense is codified in R.C. 2941.25, Ohio's allied-offenses statute. *State v. Conrad*, 2018-Ohio-5291, ¶ 43 (12th Dist.). The allied offense statute provides: (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one. (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them. R.C. 2941.25.

{¶26} Stated more simply, R.C. 2941.25 provides that in determining whether offenses are "allied" and therefore must be merged for sentencing, courts are instructed to consider three separate factors: the conduct, the animus, and the import. *State v. Singh*, 2021-Ohio-2158, ¶ 60 (12th Dist.), citing *Ruff,* 2015-Ohio-995 at paragraph one of the syllabus. A defendant may be convicted of multiple offenses arising out of an episode of criminal conduct if: "1) the offenses did not have the same import, i.e. the offenses created separate, identifiable harms; 2) the offenses were committed separately; or 3) there was a separate animus or motivation in committing the offenses." *Clowers*, 2019-Ohio-4629 at ¶ 30, citing *Ruff* at ¶ 25. If the answer to any of these three inquiries is "yes," then the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses. *See State v. Williams*, 2018-Ohio-4261, ¶ 9 (12th Dist.). The critical inquiry for an analysis under R.C. 2941.25 is the conduct of the defendant. *Clowers* at 1130, citing *Ruff* at ¶ 26.

4. Merger Analysis

a. Import

{¶27} "The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import." *Ruff* at ¶ 26. If multiple offenses were perpetrated against a single victim, the defendant may be convicted of the different offenses if the victim suffers separate and identifiable harm from the different offenses. *Clowers*, 2019-Ohio-4629 at ¶ 30, citing *Ruff* at ¶ 26. Based on the evidence in the record, including the evidence presented at the plea hearing, the PSI, and the sentencing hearing, we find that Thayer's three offenses were of dissimilar import.

{¶28} The harm suffered by the victim based on Thayer having committed aggravated theft is obvious and not controversial. The victim lost over a million dollars of her assets.

{¶29} The harm caused by the aggravated theft is separate and identifiable from the harm caused to the victim by Thayer's conduct constituting unlawful securities practices. That offense concentrates on Thayer's status as a licensed investment adviser and engaging in a deceitful "act, practice, or course of business" during that financial adviser/client relationship.

13

{¶30} At sentencing, the victim described how Thayer began helping her by providing professional accounting services. She explained that when she learned he also provided financial planning services, she thought this was "perfect" and believed that Thayer would "definitely have my best interest." She believed in 2013 that he began investing her assets and helping her plan for her future.

{¶31} The record reflects that Thayer's conduct related to unlawful securities practices involved entering into the adviser/client relationship knowing that he intended to use that relationship in order to deceive the victim (which can be reasonably ascertained given how quickly he moved to open the fraudulent bank account in the victim's name). Thayer then acted deceitfully by forging documents to sell the victim's assets instead of investing them and then hiding the proceeds. Throughout the course of his business with the victim, Thayer repeatedly lied to the victim by telling her that her investments would "be enough for [the victim's] future." And Thayer acted deceitfully when he lied to the victim by telling her that unexpected losses in her accounts were due to market fluctuations. Thayer's actions related to unlawful securities practices harmed the victim in that they ensured the victim kept Thayer in charge of her investments over the course of the scheme and prevented the victim from uncovering the theft offense and preventing further loss. His actions also harmed the victim in that they prevented the victim from accumulating investment returns over the course of the scheme.

{¶32} Moreover, Thayer's unlawful securities practices created separate and identifiable harm because they violated and undermined the regulatory scheme set forth in Chapter 1707 of the Ohio Revised Code. Chapter 1707 defines an "investment adviser" as,

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as a part of regular business, issues or promulgate analyses or reports concerning securities.

RC 1707.01(X)(1).

{¶33} Under R.C. 1707.141, no person is permitted to act as an investment adviser and conduct business in Ohio unless that they have been licensed as an investment adviser by the Ohio Division of Securities or they are registered under the federal Investment Advisers Act of 1940.1. Chapter 1707 generally sets forth the licensing and registration laws applicable to investment advisers and others subject to regulation under the Chapter. The Chapter further provides the Ohio Division of Securities with regulatory oversight over investment advisers. *See* R.C. 1701.01 thru 1701.99. The statutory framework of Chapter 1707 demonstrates that the state has a strong interest in regulating investment advisers because the potential for financial abuse—as seen here—is so great.

{¶34} Thayer had the victim's trust and access to her assets. This trust was largely premised on the fact that Thayer was licensed by the state to act as an investment adviser. Thayer's conduct undermined the victim's trust in licensed financial advisers, it undermined the general public's trust in licensed financial advisers, and

it undermined the state's licensing and regulatory process. In that final regard, Thayer's conduct in this case was so serious that the Ohio Division of Securities participated in the investigation and was substantially involved in plea negotiations. A representative of the Division also attended Thayer's sentencing.

{¶35} The harms described above are also separate and identifiable from the harm caused by Thayer's actions in stealing the victim's identity. At oral argument, Thayer contended that the identity theft crime—that is, opening the fraudulent bank account caused the victim no harm and that it was only when the money was taken and spent from the bank account that the victim suffered any actual harm. We disagree.

{¶36} There is no doubt that an identity has value. In the case of public figures, an identity, and the associated branding and licensing rights, can be worth millions. But for the ordinary citizen, an identity also has significant value because personal identifying information can be used as a tool to commit any number of fraudulent actions, such as opening an unauthorized bank account or line of credit. The time and effort involved in straightening out the financial impact of a case of identity theft can be extraordinary, and the impact may continue far into the future. Ordinary citizens pay for identity-theft monitoring services for this very reason.

{¶37} In this case, before committing the aggravated theft of the victim's funds, Thayer used his access to the victim's personal identifying information to open the Ally Bank account. The act of using the victim's identity to open a fraudulent bank account caused the victim separate and identifiable harm because the victim never authorized the opening of the account, never had knowledge of the account, and never had access to or control over the account. But of course the account was still in her name. Had she had access to this account, she could have used the money or at least been aware of how the money was being spent.

{¶38} In his appellate brief, Thayer focuses his import argument on the fact that there was only one victim and argues that "Two or more offenses are most commonly found to be dissimilar in import when the offenses involve separate victims. *Ruff*, 2015-Ohio-995 at ¶ 23." Thayer contends that there was only one victim, and all three offenses were part of a single scheme to steal money from the victim.

{¶39} However, while the court in *Ruff* did state that offenses are of dissimilar import where there are multiple victims, the court also stated that in case of a single victim, offenses are of dissimilar import where the harm of each offense is separate and identifiable:

> What we conclude from these cases is that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or *if the harm that results from each offense is separate and identifiable.*

(Emphasis added.) 2015-Ohio-995 at ¶ 23.

{¶40} As set forth above, we have found that each offense caused separate and identifiable harm.

15

b. Separate Offenses

{¶41} We also conclude that Thayer committed the offenses separately. This court has previously held that if one offense is completed before the other begins, then "the offenses are considered separately for sentencing purposes even though the two offenses may have been committed in close proximity in time." *State v. Fields*, 2015-Ohio-1345, ¶18 (12th Dist.).

{¶42} The record indicates that Thayer completed each offense at different times. The identity theft offense was completed when Thayer opened the fraudulent bank account at Ally Bank in November of 2013. Thayer completed the offense of unlawful securities practices through his ongoing efforts between November 2013 and August 3, 2022, to deceive the victim and keep her as a client, by failing to invest her money and instead selling her investments, by transferring the proceeds of her investments to a fraudulent bank account, and by continually lying to her about the status of her investments. Thayer completed the theft offense separately from the conduct constituting unlawful securities practices, at the various times that Thayer spent the money in the Ally Bank account on his own personal spending.

{¶43} Because all three offenses were of dissimilar import and were also committed separately, the trial court was not required to merge the offenses for sentencing. And, therefore, we are not required to consider the final step of the *Ruff* analysis and determine whether the offenses were committed with a separate animus or motivation. *See Williams*, 2018-Ohio-4261 at ¶ 9; *see also State v. Conrad*, 2019-Ohio-263, ¶ 40 (4th Dist.).

(ECF No. 17 at PageID# 154–161).

The Ohio Court of Appeals concluded that, under Ohio statute's concerning merger of "allied offenses," Ohio Rev. Code Ann. § 2941.25, aggravated theft, unlawful securities practices, and identity theft were not allied offenses requiring merger. That state-court determination is conclusive. *See Jackson*, 745 F.3d at 214–15. Even if the Court of Appeals did err in applying Ohio law, that error would not give Thayer grounds for § 2254 relief. *Id.* ("[T]he Ohio Court of Appeals . . . discerned the Ohio legislature's intent by applying Ohio's allied offenses statute— there can be no doubt that its decision falls outside § 2254(d)(1)'s narrow exceptions to the bar on federal habeas relief, thus rendering Jackson ineligible for relief.").

Ground One lacks merit and should be dismissed.

16

### D.    Alternative Merits Analysis  (Grounds 2 and 3)

As explained, Grounds 2 and 3 are procedurally defaulted.  They also lack merit.

#### 1.    *Ground 2*

In Ground Two, Thayer contends that the state violated his due process rights under the Fourteenth Amendment "by changing the facts of the case and by potentially prosecuting an offense beyond the statute of limitations." (ECF No. 1-1 at PageID# 22).  Noted above, Thayer procedurally defaulted Ground Two by failing to raise it with the Ohio state courts.  That said, Ground Two should be dismissed in the alternative because it is without merit.

Thayer appears to object to the argument in the state's direct appeal brief that the crime of "identity fraud was complete when Thayer used [the victim's] identifying information and held himself out to be her, without her knowledge or consent, when opening the Ally Bank account." (ECF No. 17 at PageID# 135).  The Court of Appeals agreed when it concluded that "[t]he identity theft offense was completed when Thayer opened the fraudulent bank account at Ally Bank in November of 2013." (*Id.* at PageID# 160).  Thayer argues that the charge of identity theft was barred by the statute of limitations, Ohio Rev. Code Ann. § 2901.13, by the time he was indicted in 2023, making the state's argument on appeal a due process violation. (ECF No. 1-1 at PageID# 22, 34).

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012) (internal quotations omitted).  That is because:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

17

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Therefore, "after the entry of an unconditional guilty plea, a defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012). "[B]ecause R.C. 2901.13 is a statute of limitations rather than a statute of repose, violation of the statute does not affect the jurisdiction of the trial court." *Daniel v. State*, 98 Ohio St. 3d 467, 468 (2003) (citing *State v. Brown*, 43 Ohio App. 3d 39, 43 (1988)). When Thayer pled guilty to identity theft on August 4, 2023, he waived any contention that the crime was time barred.[4] The state was free to argue on appeal that the identity theft was complete in 2013.

That said, notwithstanding the waiver, Thayer cannot demonstrate that he was prejudiced by the state's argument on appeal. The Supreme Court has "adopted the general rule that a constitutional error does not automatically require reversal of a conviction . . . and has recognized that most constitutional errors can be harmless." *Hereford v. Warren*, 536 F.3d 523, 528 (6th Cir. 2008) (citing *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)). Assuming—without deciding—that Thayer has stated a constitutional claim in Ground Two, any error was harmless. Ohio's "allied offenses" statute, Ohio Rev. Code Ann. § 2941(B), is *disjunctive*, meaning the Court of Appeals only had to find that the offenses were either of "dissimilar import" or "committed separately."[5] The Court of Appeals found both conditions (ECF No. 17 at PageID# 154–161), and the statute of limitations argument made by the state only applies to the finding that the identity theft charge was "committed separately." (*Id.* at PageID# 160). In other words, even if the state

---

[4] To the extent Thayer claims that he is entitled to substantive habeas relief because the identity theft charge is barred by the statute of limitations, that claim too is waived. Moreover, Thayer did not raise with the state courts, under any theory of relief, that he was entitled to post-conviction relief because the identity theft charge was barred by the statute of limitations.

[5] The statute also includes "with a separate animus," but the Court of Appeals found that the state conceded that the crimes were committed with the same animus, so the Court of Appeals did not conduct this analysis. (ECF No. 17 at PageID# 161).

18

had not argued on appeal that the crime of identity theft was complete in 2013, the Court of Appeals still would have found that the consecutive sentences were appropriate under Ohio's "allied offenses" statute.

For all these reasons, Ground Two should be dismissed as procedurally defaulted and, alternatively, because it lacks merit.

### 2. Ground Three

In Ground Three, Thayer contends that his appellate counsel was ineffective for failing to object to the state's argument that the identity theft crime was complete in 2013. (ECF No. 1-1 at PageID# 23–24). Thayer argues that his appellate counsel should have responded to the state's argument because if the identity theft was complete in 2013, it was barred by the statute of limitations. (*Id.*). As stated above, Ground Three is procedurally defaulted because Thayer failed to pursue an Ohio App. R. 26(B) motion to reopen his direct appeal. It should also be dismissed because it lacks merit.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defense." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010). With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must

> indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an exhausted claim of ineffective assistance of trial counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). That means, "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether trial counsel was ineffective, but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The Supreme Court clarified the double deference that is due:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal citation omitted).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, the court must assess the strength of the claim that counsel failed to raise.

*Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009)).  Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal.  *Id.* (citing *Wilson*, 515 F.3d at 707).  The attorney need not advance every argument, regardless of merit.  *Jones v. Barnes*, 463 U.S. 745, 751–752 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made.  *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley*, 380 F.3d 932, 971 (6th Cir. 2004); *see also Smith v. Murray*, 477 U.S. 527 (1986).  "Only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of [appellate] counsel be overcome." *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017) (quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008)).

The record reflects that Thayer's appellate counsel did not respond to the state's direct appeal argument that the crime of identity theft was committed separately, and therefore subject to a consecutive sentence, because it was complete in 2013.  (*Id.* at PageID# 173–186; *see* Reply Brief, ECF No. 17 at PageID# 141–146 (memorandum in support of jurisdiction)).  Yet Thayer cannot establish that he was prejudiced.  As discussed above, any statute of limitations argument would have been futile because Thayer waived it by pleading guilty.  Moreover, even if Thayer's appellate counsel had made the argument and the Court of Appeals had considered it, it would have made no difference to the outcome of his appeal.  The Court of Appeals independently found

21

that the consecutive sentences were appropriate because the crimes were of "dissimilar import." (*Id.* at PageID# 156–160).

Consequently, Ground Three should be dismissed because it is procedurally defaulted and, alternatively, because it lacks merit.

## V.      CONCLUSION

It is therefore **RECOMMENDED** that the habeas petition be **DENIED**, and this action be **DISMISSED WITH PREJUDICE.**

For the foregoing reasons, the Undersigned **RECOMMENDS**:

1.    Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1-1) be **DENIED** with prejudice.

2.    A certificate of appealability should not issue with respect to the petition because petitioner has not stated a "claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.    With respect to any application by a petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.   *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

### PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in forfeiture of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a forfeiture of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED**.


Date: June 11, 2026　　　　　　　　　　　　　*/s/ Kimberly A. Jolson*
　　　　　　　　　　　　　　　　　　　　　　KIMBERLY A. JOLSON
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE